# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **VS.** | ) | **Civil Action No.  SA-06-MC-781-XR** |
| | ) | |
| **DONALD E. ROBINSON,** | ) | |
| | ) | |
| **Respondent.** | ) | |

## ORDER

On this date, the Court considered the "Praecipe," "Affidavit of Inability to Pre-Pay Fees," and "Emergency Petition for Great Writ of Habeas Corpus" filed by Movant "Robert-James: Fox" on behalf of "Donald-Eugene: Robinson." The Court ORDERS the Clerk to STRIKE these filings (Docket Nos. 16, 17, & 18). The Court is striking these filings because Fox is not a licensed attorney. If Dr. Robinson wishes to challenge his incarceration, he or his attorney may appeal the Court's Order finding him in civil contempt. Robinson may represent himself pro se or he may retain a licensed attorney; however, he may not retain a non-attorney to represent him. The Clerk shall forward a copy of this Order to Respondent Donald E. Robinson, c/o GEO Group, Inc., 218 S. Laredo Street, San Antonio, Texas 78206. The Clerk shall also forward a copy of this Order to Movant Robert James Fox, 300 S. Main Street, Jacksonville, Texas 75766. The Clerk shall docket this Order under case number SA-06-MC-781-XR and SA-06-CV-781-XR. All future filings in this case should be docketed under case number SA-06-CV-781-XR.

### I. Factual & Procedural Background

On September 12, 2006, Petitioner United States of America ("Government") filed its

petition to enforce Internal Revenue Service ("IRS") summons. The petition stated that Robinson failed to appear at the IRS offices on June 29, 2006 to give testimony and produce documents relating to Robinson's alleged delinquent tax liabilities. On September 14, 2006, the Court issued an Order directing Robinson to appear at the IRS office on October 18, 2006 and to attend a show cause hearing before the Court on November 17, 2006. On October 16, 2006, Robinson filed an answer to the Government's petition, entitled "Response to Letter Rogatory," which contained twenty-eight, single-spaced pages of miscellaneous legal arguments. Robinson appeared at a rescheduled show cause hearing before the Court on January 5, 2007, at which time the Court ordered Robinson to appear at the IRS offices on January 31, 2007 and produce documents responsive to the IRS summons.

On February 5, 2007, Robinson filed a document entitled "Mandatory Judicial and/or Administrative Notice." Robinson requested that the Court take mandatory judicial notice of certain documents before his second show cause hearing. Robinson submitted two documents to the Court, which purported to be confidentiality / non-disclosure agreements between him and two trust entities—Oblique Management Fund ("Oblique") and GrayGo Management ("GrayGo"). The Oblique confidentiality agreement stated that Oblique had loaned Robinson an undisclosed sum of money, and in return Robinson executed a promissory note in favor of Oblique on December 4, 2004. This document further stated that the parties "shall not disclose to any . . . governmental agency any information whatsoever pertaining to each other without prior written approval." The document stated that breach of the confidentiality agreement would subject Robinson to liability for breach of contract. The GrayGo confidentiality agreement, entitled "Oath of Privacy Resolution," stated that Robinson is the "General Manager" of that organization. This document stated that

Robinson "will not divulge any information concerning the affairs or activities" of the organization and that he should invoke the protections of the Fifth Amendment if any court attempts to compel him to divulge any information regarding GrayGo.  Robinson also included a letter he wrote to Ann Ackroyd, IRS Revenue Agent, which stated that would not divulge information responsive to the IRS summons unless the Government agreed to indemnify him in the amount of ten million dollars for breach of his confidentiality agreements with Oblique and GrayGo.  In the same letter, Robinson challenged the authority of the IRS and Ackroyd to issue the summons and investigate his tax liabilities.  Robinson also submitted over twenty, single-spaced pages of miscellaneous legal arguments.  His general arguments were as follows: (1) trusts are legal entities; (2) trusts can be formed for the express purpose of avoiding taxation; (3) a trust is not liable for the personal debts of the trustee; and (4) trust income can be non-taxable to the grantor.  It appears that Robinson is arguing that he can avoid federal taxation by transferring his income and assets to Oblique, GrayGo, and off-shore bank accounts associated with those entities.

Robinson attended a second show cause hearing before the Court on February 9, 2007.  When asked to state his name for the record, Robinson stated, "I am Donald Eugene Robinson, free man in the land, endowed by the Creator with domination – I am not a fictional person." Tr. 2:10-12.  The Assistant United States Attorney ("AUSA") stated that Robinson had appeared at the IRS offices on January 31, 2007, but he did not produce all the information responsive to the summons. At the January 31, 2007 IRS meeting, Robinson only produced some debit card information related to his off-shore bank accounts and his passport.

At the hearing, Ackroyd testified that Robinson had submitted yearly individual returns and returns for his podiatrist office.  He and his podiatrist business paid a total of thirty-six dollars ($36)

in income taxes over an eight (8) year period. Tr. 5:16-21. Robinson has off-shore accounts with Provident Bank & Trust in Belize and Anglo Irish Bank in Austria, and he has three debit cards associated with the Provident Bank & Trust account. Tr. 8:4, 8:16, 9:18, 17:15. Robinson provided the IRS with cancelled checks he had drawn on the Anglo Irish account. Tr. 9:22-24.

Ackroyd further testified that GrayGo is a trust, and money from Robinson's podiatry office is flowing into this trust. Tr. 10:20-21. Additionally, Robinson is transferring his personal assets and income into Oblique. Tr. 11:4-8. Other than the two purported confidentiality agreements, Robinson did not submit any documentary information related to GrayGo and Oblique to the IRS. Tr. 11:21-23. Ackroyd testified that Robinson had failed to provide her with information fully responsive to the IRS summons, including information related to GrayGo, Oblique, and his off-shore bank accounts. Tr. 12:6-11.

Ackroyd testified that Robinson is reducing his gross income on his tax returns by claiming potentially invalid deductions for management fees, consulting fees, and professional fees payable to Provident Bank & Trust, Anglo Irish Bank, and GrayGo Management. Tr. 14:15-23. Ackroyd stated that she needs all the information responsive to the IRS summons in order to evaluate the legitimacy of these deductions. Tr. 15:1-2.

The tax returns for GrayGo indicate that income is going in and flowing back out to another undisclosed entity, and the money flowing into GrayGo has not been taxed. Tr. 16:11-23. Ackroyd believes that Robinson moves pre-tax dollars off-shore and then uses the debit cards to spend that money in the United States. Tr. 18:20-23.

During his cross-examination of Ackroyd, Robinson established that at least some of the debit card purchases occurred in Thailand. Tr. 19:23-24. Although he could not elicit an answer on

the subject, Robinson's questions suggested that he could spend money on his off-shore debit cards without having money pre-deposited with the foreign banks to cover those transactions. Tr. 21:5-9.

The Court stated that the IRS had the authority to issue its summons pursuant to 26 U.S.C. § 7602. Robinson stated that he could not answer questions about GrayGo and Oblique based on the two confidentiality agreements. Tr. 23:18-20. He did, however, testify that he was the manager of Oblique and reported to the trustees. Tr. 25:5-13. Robinson testified that he does not send money to Oblique, but he does send money to GrayGo, which manages his podiatry office. Tr. 26:15-23, 27:2-6. Robinson testified that he sends management fees to GrayGo, which he deducts from his income taxes. Tr. 27:13-15. Robinson refused to explain the relationship of the two off-shore bank accounts to Oblique and GrayGo, but stated that a relationship does exist. Tr. 27:16-19, 28:16-21.

In response to the allegation that he was in contempt of past Court Orders to produce certain documents and information, Robinson asserted that he does not have any more documents and that he cannot divulge information related to Oblique and GrayGo because of the confidentiality agreements. Tr. 29:5-25. Robinson testified that he could produce documents of GrayGo, which runs his podiatry offices, but the trustees of Oblique verbally told him not to disclose any information despite the Court's Order. Tr. 30:9-23, 32:21-33. Robinson also stated that Provident Bank & Trust has a relationship with Oblique. Tr. 34:1-7.

The Court found Robinson in civil contempt and ordered him incarcerated until such time as he complied with the Court's Order mandating compliance with the IRS summons. Tr. 36:18-23. Robinson retorted that he does not have any further documents responsive to the IRS summons. Tr. 37:12-15. Robinson stated that he deposited money with Anglo Irish Bank as recently as December 2006, but he does not keep any paper records of the transactions, and he has deleted the e-mail

records of all past transactions with his off-shore financial institutions. Tr. 38:12-17, 21-23.

Robinson stated that he would appeal the Court's civil contempt Order.  Tr. 40:7-8. Robinson has still refused to comply with the Court's Order.  He was incarcerated on February 9, 2007, and a status conference is set before the Court on March 30, 2007.  Robinson is currently in federal custody and is being held by the GEO Group, Inc. 218 S. Laredo Street, San Antonio, Texas 78206.

## II. Legal Analysis

**A.    The Court will STRIKE the filings submitted by Robert James Fox on behalf of Donald Eugene Robinson because Fox is not a licensed attorney.**

Robinson has the right to represent himself without an attorney (i.e. proceed pro se).  *See* 28 U.S.C. § 1654 ("In all courts of the United States the parties may plead and conduct their own cases personally or by counsel . . . ."); *Memon v. Allied Domecq QSR*, 385 F.3d 871, 873 (5th Cir. 2004); *Harris v. Apfel*, 209 F.3d 413, 415 (5th Cir. 2000)  However, a non-attorney cannot represent someone else pro se.  *Powerserve Int'l v. Lavi*, 239 F.3d 508, 514 (2d Cir. 2001) ("an individual may not appear on another person's behalf in the other's cause"); *Lewis v. Lenc-Smith Mfg.*, 784 F.2d 829, 830 (7th Cir. 1986) ("it is clear that an individual may appear in the federal courts only pro se or through counsel").

Fox is not a licensed attorney.  He is not licensed to practice in the Western District of Texas, and he has not been granted admission to appear before the Court pro hac vice.  In *Lewis*, the Seventh Circuit stated the following: "All too frequently non-lawyers, as here, bring less than considered appeals and present arguments in an inarticulate, if not totally incomprehensible, manner. Accordingly, we strike both the appearance . . . and the brief." 784 F.2d at 830.  Accordingly, the

Court will STRIKE all filings submitted by Fox.  Robinson may represent himself pro se, or he may hire a licensed attorney to represent him in this matter.  Fox may hire an attorney to represent Robinson, but Fox may not represent Robinson himself.

**B.      The Court had the authority to enter a civil contempt order of imprisonment  in order to coerce Robinson to comply with the IRS summons.**

To obtain enforcement of a summons, the IRS must first establish its "good faith" by showing that the summons: (1) is issued for a legitimate purpose; (2) seeks information relevant to that purpose; (3) seeks information that is not already within the possession of the IRS; and (4) satisfies all administrative steps required by the United States Code. *United States v. Powell*, 379 U.S. 48, 57-58 (1964). In this case, the Government's petition and Revenue Officer Ackroyd's summons satisfies all four elements of the *Powell* standard.  The summons was issued for the legitimate purpose of ascertaining the amount of Robinson's outstanding tax liabilities.  Based on testimony elicited during the hearing, information related to Oblique, GrayGo, and the off-shore bank accounts is relevant to that purpose.  Ackroyd testified at the hearing that the IRS did not have the requested material in its possession.  Finally, the "Service of Summons, Notice and Recordkeeper Certificates" attached to the petition indicate that the IRS has followed all administrative steps required by the United States Code.

28 U.S.C. 1826(a) provides:

> Whenever a witness in any proceeding before or ancillary to any court or grand jury of the United States refuses without just cause shown to comply with an order of the court to testify or provide other information ... the court upon such refusal, or when such refusal is duly brought to its attention, may summarily order his confinement . . . but in no event shall such confinement exceed eighteen months.

The Fifth Circuit has delineated the test for civil contempt.  In *Piggly Wiggly Clarksville, Inc. v. Mrs.*

-7-

*Baird's Bakeries, Inc.*, the Court observed that the test for contempt requires the showing that (1) a court order was in effect; (2) the order required certain conduct; and (3) the respondent failed to comply with the order. 177 F.3d 380, 382 (5th Cir.1999). In civil contempt, the burden of proof is clear and convincing, as opposed to preponderance of evidence. *Petroleos Mexicanos v. Crawford Enterprises, Inc.*, 826 F.2d 392, 401 (5th Cir.1987). In a civil contempt proceeding, clear and convincing evidence is "that weight of proof which 'produces in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established, evidence so clear, direct and weighty and convincing as to enable the fact finder to come to a clear conviction, without hesitancy, of the truth of the precise facts' of the case." *Travelhost, Inc. v. Blandford*, 68 F.3d 958, 961 (5th Cir. 1995).

 "A party commits contempt when he violates a definite and specific order of the court requiring him to perform or refrain from performing a particular act or acts with knowledge of the court's order." *Travelhost, Inc. v. Blandford*, 68 F.3d 958, 961 (5th Cir.1995) (quoting *Securities and Exchange Commission v. First Financial Group of Texas, Inc.*, 659 F.2d 660, 669 (5th Cir.1981)). Intent is not an issue in civil contempt proceedings; rather, "the question is not one of intent but whether the alleged contemnors have complied with the court's order." *Jim Walter Res. v. Int'l Union, United Mine Workers of America*, 609 F.2d 165, 168 (5th Cir.1980). A district court may enter a civil contempt order of imprisonment in order to coerce the contemnor into future performance of an affirmative act. *U.S. v. Brumfield*, 188 F.3d 303, 307 (5th Cir. 1999); *Gompers v. Buck's Stove & Range Co.*, 221 U.S. 418, 442 (1911). In *Gompers*, the Supreme Court stated the following:

 But imprisonment for civil contempt is ordered where the defendant has refused to

> do an affirmative act required by the provisions of an order which, either in form or
> substance, was mandatory in its character. Imprisonment in such cases is not inflicted
> as a punishment, but is intended to be remedial by coercing the defendant to do what
> he had refused to do. The decree in such cases is that the defendant stand committed
> unless and until he performs the affirmative act required by the court's order.

221 U.S. at 442.

The Court's January 8, 2007 Order stated the following: "It is ORDERED that Respondent appear at the office of Revenue Agent Ann Ackroyd, Internal Revenue Service . . . on January 31, 2007, at 8:00 a.m. for the purpose of obeying the IRS summons served on Respondent and to bring with him all the items set out in the summons subject of this action and to testify." *See* Docket No. 12. Based on the information elicited during the show cause hearing, the Court found by clear and convincing evidence that Robinson had refused to comply with the IRS summons and testify.  The Court's Order required certain conduct, and Robinson refused to comply.  The Court ordered that Robinson be confined until he produces documents responsive to the IRS summons and testifies.  Thus, Robinson "carries the keys to his prison in his own pocket," and he may purge the contempt and obtain release from prison by complying with the Court's Order.  *Gompers*, 221 U.S. at 442. ("He can end the sentence and discharge himself at any moment by doing what he had previously refused to do").  "If the purpose of the sanction is to coerce the contemnor into compliance with a court order . . . [then] the order is considered purely civil."  *Lamar Fin. Corp. v. Adams*, 918 F.2d 564, 566 (5th Cir. 1990).

### C.    Robinson or Robinson's attorney may appeal.

The law governing the appealability of civil contempt orders is complicated. *See* 15B WRIGHT, MILLER & COOPER, FEDERAL PRACTICE AND PROCEDURE § 3917 (2d ed. 2006). Nevertheless, the Fifth Circuit has held that Orders denying motions to purge civil contempt are final

and appealable. *U.S. v. Brumfield*, 188 F.3d 303, 306 (5th Cir. 1999).  In other words, if this Court determines at the March 30th hearing that Robinson still has not purged himself of the civil contempt by complying with the IRS summons, that Order is "final" and a new right to appeal will be triggered. *See Id.* ("Clearly, one who, subsequent to being jailed for contempt, has taken steps which he contends should purge himself of contempt should be afforded an effective avenue for review of an adverse ruling by the district court on his motion to be relieved of sanctions, especially incarceration. In no sense is such a ruling interlocutory").

The Fifth Circuit has also held that an incarcerated contemnor in an IRS summons enforcement proceeding may argue on appeal that he is presently unable to comply with the Court's order compelling production. *See U.S. v. Sorrells*, 877 F.2d 346, 348-49 (5th Cir. 1989) (citing *U.S. v. Rylander*, 460 U.S. 752, 757 (1983)).   However, the defendant bears the burden of producing credible evidence establishing his present inability to comply with the Court's order. *Id.*

In this case, Robinson stated that he would not produce documents related to Oblique and GrayGo because of the confidentiality agreements. Tr. 29:5-25.  However, a private confidentiality agreement will not trump a court order of production unless an established legal privilege applies. Fed. R. Civ. P. 26(b)(1); *Jaffee v. Redmond*, 518 U.S. 1, 8-9 (1996).

If Robinson wishes to purge himself of contempt prior to the March 30th hearing, he or his attorney should file a motion to purge contempt with this Court, and the Court will schedule an expedited hearing. The complexity of this area of the law should motivate Robinson to hire a licensed attorney to represent him.

### III. Conclusion

The Court STRIKES the pleadings submitted by Fox.  The Court strongly recommends that

-10-

Robinson hire a licensed attorney to represent him. The Clerk shall forward a copy of this Order to Respondent Donald E. Robinson, c/o GEO Group, Inc., 218 S. Laredo Street, San Antonio, Texas 78206.  The Clerk shall also forward a copy of this Order to Movant Robert James Fox, 300 S. Main Street, Jacksonville, Texas 75766.  The Clerk shall docket this Order under case number SA-06-MC-781-XR and SA-06-CV-781-XR.  All future filings in this case should be docketed under case number SA-06-CV-781-XR.

It is so ORDERED.

SIGNED this 1st day of March, 2007.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE

-11-